IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| Angeles, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **C.A. No.: 5:25-cv-463** |
| Bering Yachts, LLC; Bering Yacht Sales, | ) | |
| LLC; Hysucat USA, Inc.; Bering Marine, | ) | |
| LLC; Bering Naval Yatcilik Sanayi Ticaret | ) | |
| Limited Sirketi dba Bering Naval Yachts; | ) | |
| Bering Naval Serbest Bölge Şubesi; Bering | ) | **JURY TRIAL DEMANDED** |
| Naval Yatçılık Sanayi Ticaret Limited | ) | |
| Şirketi Üçüncü Şubesi; Management | ) | |
| Yatçılık Sanayi ve Ticaret Limited Şirketi; | ) | |
| New Technologies Yatçılık Sanayi ve | ) | |
| Ticaret Limited Şirketi; Setup Marine | ) | |
| Mühendislik Elektrik Elektronik Otomasyon | ) | |
| Yazılım Tekne Bakım Onarım Sanayi ve | ) | |
| Ticaret Limited Sirketi; Bering Yachts | ) | |
| Bulgaria Ltd.; Bering Yachts Bulgaria | ) | |
| Shipyard Ltd.; Seagull Turizm Ticaret ve | ) | |
| Sanayi Limited Sirketi; Alexei Mikhailov | ) | |
| aka Alexey Mikhaylov aka Alexey | ) | |
| Borisovich Mikhailov; Natalya Viktorovna | ) | |
| Mishina; Aleksandr Viatkin aka Alexander | ) | |
| Vyatkin aka Alexandr Viatkin aka Alexander | ) | |
| Gennadievich Vyatkin; Olga Kibireva; Larry | ) | |
| Williams; Alexander Kholyavskiy; John | ) | |
| Doe Corporations 1–5 | ) | |
| | | |
| Defendants. | | |

## **COMPLAINT**

Plaintiff, Angeles, LLC by and through its undersigned attorneys, complaining of the

Defendants herein, and in support thereof, avers as follows:

1

## PARTIES AND JURISDICTION

1.      Plaintiff, Angeles, LLC ("Angeles"), is a limited liability company organized and existing under the laws of the State of Delaware.

2.      Angeles' members are Exuma, LLC ("Exuma") and Rim Planets, LLC ("Rim").

3.      Exuma is a limited liability company organized and existing under the laws of the State of Wyoming.

4.      Exuma's members are individuals, both of whom are residents and citizens of the State of Nevada.

5.      Rim is a limited liability company organized and existing under the laws of the State of Delaware.

6.      Rim's sole member is an individual who is a resident and citizen of the State of Oregon.

7.      Defendant Bering Yachts, LLC ("Bering Yachts") is a limited liability company organized and existing under the laws of the State of North Carolina, with its principal place of business located at 12608 Leatherwood Court, Raleigh, North Carolina 27613.

8.      At all times relevant, Bering Yachts' members are and/or were Alexei Mikhailov aka Alexey Mikhaylov aka Alexey Borisovich Mikhailov and Natalya Viktorovna Mishina, both of whom are citizens and residents of the State of North Carolina.

9.      Bering Yachts may be served with process via its registered agent, Alexei Mikhailov aka Alexey Mikhaylov aka Alexey Borisovich Mikhailov at 12608 Leatherwood Court, Raleigh, North Carolina 27613.

2

10. Defendant Bering Yacht Sales, LLC ("Bering Sales") is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located at 12608 Leatherwood Court, Raleigh, North Carolina 27613.

11. At all times relevant, Bering Sales' sole member was and is Alexei Mikhailov aka Alexey Mikhaylov aka Alexey Borisovich Mikhailov.

12. Bering Sales may be served with process via its registered agent, Alexei Mikhailov aka Alexey Mikhaylov aka Alexey Borisovich Mikhailov, at 801 Seabreeze Blvd, Fort Lauderdale, Florida 33316 or 12608 Leatherwood Court, Raleigh, North Carolina 27613.

13. Defendant Hysucat USA, Inc. ("Hysucat") is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business located at 12608 Leatherwood Court, Raleigh, North Carolina 27613.

14. Hysucat may be served with process via its registered agent, Alexei Mikhailov aka Alexey Mikhaylov aka Alexey Borisovich Mikhailov, at 12608 Leatherwood Court, Raleigh, North Carolina 27613.

15. Defendant Bering Marine, LLC ("Bering Marine") is a limited liability company organized and existing under the laws of the State of North Carolina with its principal place of business located at 12608 Leatherwood Court, Raleigh, North Carolina 27613.

16. At all times relevant, Bering Marine's members are and/or were Alexei Mikhailov aka Alexey Mikhaylov aka Alexey Borisovich Mikhailov, Alexander Kholyavskiy, and Larry Williams, all of whom are residents of the State of North Carolina.

17. Bering Marine may be served with process via its registered agent, Alexei Mikhailov aka Alexey Mikhaylov aka Alexey Borisovich Mikhailov, at 12608 Leatherwood Court, Raleigh, North Carolina 27613.

3

18.     Defendant Bering Naval Yatcilik Sanayi Ticaret Limited Sirketi aka Bering Naval Yachting Industry Trade Limited Company dba Bering Naval Yachts ("Bering Naval") is a foreign entity organized and existing under the laws of the Country of Turkey, with its principal place of business located at Liman Mah. Akdeniz Bul. Azize Kahraman Sitesi: no: 258A Konyaaltı / Antalya.

19.     Bering Naval may be served with process pursuant to the processes set forth in the Hague Convention or alternative service as permitted by Turkish law.

20.     Defendant Bering Naval Serbest Bölge Şubesi aka Bering Naval Free Zone Branch ("Bering Naval Free Zone Branch") is a foreign entity organized and existing under the laws of the Country of Turkey, with its principal place of business located at Antalya Serbest Bölgesi 3.Sok. No:1 C Adası 32/2 33/1 Konyaaltı/Antalya.

21.     Bering Naval Free Zone Branch may be served with process pursuant to the processes set forth in the Hague Convention or alternative service as permitted by Turkish law.

22.     Defendant Bering Naval Yatçılık Sanayi Ticaret Limited Şirketi Üçüncü Şubesi aka Bering Naval Yachting Industry Trade Limited Company Third Branch ("Bering Naval Third Branch") is a foreign entity organized and existing under the laws of the Country of Turkey, with its principal place of business located at Liman Sb Mah. 5. Sk. As Cımento Hazine-44 No: 13 İç Kapı No: 1 Konyaaltı / Antalya

23.     Bering Naval Third Branch may be served with process pursuant to the processes set forth in the Hague Convention or alternative service as permitted by Turkish law.

24.     Defendant Management Yatçılık Sanayi ve Ticaret Limited Şirketi aka Management Yachting Industry and Trade Limited Company ("Bering Naval Management") is a foreign entity organized and existing under the laws of the Country of Turkey, with its principal

4

place of business located at Liman Sb Mahallesi 3. Sk. Mrs Vinç İmalat İnş.Malz.San. Apt. No: 18 Konyaaltı/Antalya.

25.     Bering Naval Management may be served with process pursuant to the processes set forth in the Hague Convention or alternative service as permitted by Turkish law.

26.     Defendant New Technologies Yatçılık Sanayi ve Ticaret Limited Şirketi aka New Technologies Yachting Industry and Trade Limited Company ("Bering Naval Technologies") is a foreign entity organized and existing under the laws of the Country of Turkey, with its principal place of business located at Mecidiyeköy Mahallesi Şair Sabri Sk. Alkım Ishanı Apt. No: 14 A Şişli/İstanbul.

27.     Bering Naval Technologies may be served with process pursuant to the processes set forth in the Hague Convention or alternative service as permitted by Turkish law.

28.     Defendant Setup Marine Mühendislik Elektrik Elektronik Otomasyon Yazılım Tekne Bakım Onarım Sanayi ve Ticaret Limited Şirketi aka Setup Marine Engineering Electrical Electronic Automation Software Boat Maintenance Repair Industry and Trade Limited Company ("Bering Naval Setup") is a foreign entity organized and existing under the laws of the Country of Turkey, with its principal place of business located at Hurma Mah. 298 Sk. İnş.-C Bl. No: 3ca Konyaaltı / Antalya.

29.     Bering Naval Setup may be served with process pursuant to the processes set forth in the Hague Convention or alternative service as permitted by Turkish law.

30.     Defendant Bering Yachts Bulgaria, Ltd. ("Bering Bulgaria") is a foreign entity organized and existing under the laws of the Country of Bulgaria, with its principal place of business located at 1 Rilska street, 8000 Bourgas, Bulgaria / UIC 206905742.

5

31.     Bering Bulgaria may be served with process pursuant to the processes set forth in the Hague Convention or alternative service as permitted by Bulgarian law.

32.     Defendant Bering Yachts Bulgaria Shipyard Ltd. ("Bering Bulgaria Shipyard") is a foreign entity organized and existing under the laws of the Country of Bulgaria, with its principal place of business located at 1 Rilska street, 8000 Bourgas, Bulgaria.

33.     Bering Bulgaria Shipyard may be served with process pursuant to the processes set forth in the Hague Convention or alternative service as permitted by Bulgarian law.

34.     Defendant Seagull Turizm Ticaret ve Sanayi Limited Sirketi aka Seagull Tourism Trade and Industry Limited Company ("Seagull") is a foreign entity organized and existing under the laws of the Country of Turkey, with its principal place of business located at Liman Mah. Akdeniz Bul. Azize Kahraman Sitesi No: 258a Konyaaltı / Antalya.

35.     Seagull may be served with process pursuant to the processes set forth in the Hague Convention or alternative service as permitted by Turkish law.

36.     Defendant Alexei Mikhailov aka Alexey Mikhaylov aka Alexey Borisovich Mikhailov ("Mikhaylov") is a citizen and resident of the State of North Carolina.

37.     Defendant Natalya Viktorovna Mishina ("Mishina") is a citizen and resident of the state of North Carolina.

38.     Defendant Aleksandr Viatkin aka Alexander Vyatkin aka Alexandr Viatkin aka Alexander Gennadievich Vyatkin ("Viatkin") is a citizen and resident of the Country of Turkey and may be served with process pursuant to the processes set forth in the Hague Convention or alternative service as permitted by Turkish law.

6

39.     Defendant Olga Kibireva ("Kibireva") is a citizen and resident of the Country of Turkey and may be served with process pursuant to the processes set forth in the Hague Convention or alternative service as permitted by Turkish law.

40.     Defendant Larry Williams ("Williams") is a citizen and resident of the State of North Carolina.

41.     Defendant Alexander Kholyavskiy ("Kholyavskiy") is a citizen and resident of the State of North Carolina.

42.     Defendants John Doe Defendants 1–5 are upon information and belief as-of-yet unidentified United States, Russian, Turkish, and/or Bulgarian companies affiliated with, controlled by or under common ownership with, or under a membership with Bering Yachts, Bering Sales, Hysucat, Bering Marine, Bering Naval, Bering Naval Free Zone Branch, Bering Naval Third Branch, Bering Naval Management, Bering Naval Technologies, Bering Naval Setup, Bering Bulgaria, Bering Bulgaria Shipyard, and/or Seagull.

43.     In January 2018 Bering Yachts held half of Bering Naval's 400 outstanding shares; in May 2018 Viatkin obtained 140 shares of Bering Naval and Mikhaylov obtained 60 shares of Bering Naval, with Bering Yachts holding the remaining 200 shares; in June 2019, Bering Yachts transferred all its 200 shares of Bering Naval to Mikhaylov, with Viatkin holding the remaining 140 shares; in August 2019, Mikhaylov transferred 80 shares of Bering Naval to Viatkin; in June 2022, Mikhaylov transferred all his remaining 180 shares of Bering Naval to Viatkin, making Viatkin the sole shareholder and registered manager of Bering Naval; in July 2025, Viatkin transferred all 400 shares of Bering Naval back to Mikhaylov, making Mikhaylov the sole shareholder of Bering Naval and appointed president of the managers of Bering Naval authorized to represent and bind Bering Naval with Mikhaylov's sole signature.

7

44.     At all times relevant, Bering Yachts' members are and/or were Mikhaylov and Mishina.

45.     Bering Yachts has interchangeably described the nature of its business to the North Carolina Secretary of State's office as: "Bering Yachts Sales, LLC" and "Boat Building".

46.     At all times relevant, Bering Sales' sole member was and is Mikhaylov.

47.     Mikhaylov served as the initial incorporator for Hysucat and has served as the Registered Agent, Chairman of the Board, and sole officer for Hysucat since its inception through the present.

48.     Hysucat has interchangeably described the nature of its business to the North Carolina Secretary of State's office as: "Bering Yachts Sales LLC", "Hysucat USA", "Bering Yachts LLC", and "Boat Building".

49.     Mikhaylov served as the initial organizer of Bering Marine; in 2023 and 2024, Mikhaylov, Kholyavskiy, and Williams were reported as members of Bering Marine; in May 2025, Mikhaylov and Williams were reported as members of Bering Marine.

50.     Bering Marine has interchangeably described the nature of its business to the North Carolina Secretary of State's office as: "Boats", and "Boat manufacturing".

51.     In December 2024, Viatkin incorporated Bering Naval Setup with Viatkin holding 950 shares and the remaining 50 shares being held by Ali Emre Kirkayak; in April 2025, Viatkin transferred his 950 shares to Georgii Viatkin, who represents himself as the Information Security Specialist for Bering Yachts.

52.     As of March 2024, Mikhaylov and Viatkin were the majority shareholders of Bering Naval Technologies with Kholyavskiy also holding a minority shareholder position in Bering Naval Technologies and Mikhaylov as the sole director of Bering Naval Technologies.

8

53.     Kholyavskiy reports himself as the "Finance Manager" of Hysucat and "Executive Director" of Bering Marine.

54.     In September 2019, Bering Naval Management was incorporated with Viatkin and Kibireva as the sole shareholders and Viatkin was authorized to bind Bering Naval Management with his sole signature; in June 2022, Kibireva was also appointed manager authorized to bind Bering Naval Management with her sole signature; in June 2025, Viatkin transferred all his shares in Bering Naval Management to Kibireva and Kibireva became the sole shareholder of Bering Naval Management.

55.     In May 2018 Viatkin was appointed manager of Bering Naval Free Zone Branch authorized to bind Bering Naval Free Zone Branch with his sole signature.

56.     In August 2024, Viatkin was appointed manager of Bering Naval Third Branch authorized to bind Bering Naval Third Branch with his sole signature.

57.     In June 2022, Viatkin became the sole shareholder and manager of Seagull; in March 2023, Viatkin transferred all shares of Seagull to Kibireva; in January 2025, Kibireva transferred all shares of Seagull to Kristina Güner ("Guner"), who is the Creative Director for Bering Naval and/or Bering Yachts.

58.     Viatkin and/or Mikhaylov are the sole, majority, and/or dominant shareholders of Bering Bulgaria.

59.     The sole shareholder of Bering Bulgaria Shipyard is Atanas Dimitrov Ganchev, who is upon information and belief related to the attorney who organized Bering Bulgaria, and thus merely serves as a "straw man" for Bering Bulgaria Shipyard, subject to the complete domination and control of Viatkin and/or Mikhaylov with respect to the operations of Bering Bulgaria Shipyard.

9

60.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs.

61.     Alternatively, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1333 because the nature of the dispute between the parties is uniquely maritime in nature.

62.     Alternatively, jurisdiction is proper in this Court because the contract at issue provides "[t]his Agreement shall be governed by, construed and enforced in accordance with the laws of the State of North Carolina, USA.  All parties consent to the exclusive jurisdiction of its courts and agree to venue in Wake County, North Carolina. . . ."

63.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district insofar as the contract at issue was negotiated, delivered, and executed within this District.

64.     Venue is proper in this Division pursuant to Local Rule 40.1(c)(1) & (c)(2) insofar as Defendant Bering Yachts maintains its principal place of business in this Division, and further the members of Defendant Bering Yachts reside within this Division.

65.     Alternatively, venue is proper in this District and Division because the contract at issue provides "[t]his Agreement shall be governed by, construed and enforced in accordance with the laws of the State of North Carolina, USA.  All parties consent to the exclusive jurisdiction of its courts and agree to venue in Wake County, North Carolina. . . ."

## FACTUAL BACKGROUND

66.     On or about December 15, 2021, Angeles entered into that certain New Yacht Construction Agreement (the "Agreement") with Bering Yachts and Bering Naval (collectively hereinafter "Bering") for the construction of a yacht designated as Hull No. 1 (the "Vessel").

10

67. The Vessel is a one-of-a-kind, semi-custom 77-foot steel and aluminum Long-Range Explorer Motor Yacht, uniquely engineered and specifically constructed to fulfill highly specialized client requirements. The Vessel features a tailored interior built for charter operations, measures under 24 meters for regulatory compliance, and is outfitted with advanced Silent Mode technology, solar integration, and unique equipment essential to its intended use.

68. Due to its bespoke construction, personalized layout, and specialized outfitting, the Vessel is entirely non-replicable and cannot be readily replaced by any commercially available alternatives.

69. The Agreement provides, in relevant part, as follows: "if Bering is a member of a group of companies, Bering may perform any of its obligations or exercise any rights under the Agreement by itself or through any member of its group but provided that any act or omission of any such other member shall be deemed to be the act or omission of Bering."

70. The Agreement requires delivery of the Vessel by December 30, 2023, unless extended by agreement of the parties or as otherwise provided by the Agreement.

71. The Agreement requires Bering to provide Angeles with written notice of any event in respect to which Bering claims to be entitled to an extension of time for the delivery date for the Vessel within seven days of Bering becoming aware of the commencement of the event and within seven days of Bering becoming aware of the termination of the event.

72. A force majeure event was experienced between February 6, 2023 and February 22, 2023 and ending February 23, 2023 in connection with the construction of the Vessel, which delayed the construction by 17 calendar days.

73. Aside from the above-referenced force majeure event, Bering has not provided Angeles with written notice of any event requiring an extension of the delivery date for the Vessel.

11

74.    Angeles has not agreed or acquiesced to an extension of the delivery date for the Vessel other than the above-referenced force majeure event.

75.    The Agreement provides for installment payments coinciding with various construction benchmarks toward the completion of the Vessel.

76.    The Agreement provides that in the event of default by Bering in the progress of construction of the Vessel not caused by default of Angeles, Angles shall have the right to withhold further installment payments until such time as Bering has demonstrated its willingness and ability to complete construction of the Vessel in accordance with the specifications of the Agreement.

77.    Angeles has complied with all material terms of the Agreement including but not limited to timely installment payments coinciding with pre-determined construction benchmarks, change orders, design input, and budget approval.

78.    In March 2025, citing "current market conditions and lack of new sales," Bering requested an advancement on installment payments under the Agreement.

79.    Angeles would not agree to the requested advancement on installment payments absent Bering providing a detailed breakdown of anticipated timeline for delivery of the Vessel.

80.    As of yet, Bering has been unable or unwilling to provide the requested detailed breakdown of anticipated timeline for delivery of the Vessel.

81.    As a result of the failure of Bering's failure to deliver the Vessel within the deadline set forth in the Agreement, Angeles has been deprived of the use of the one-of-a-kind yacht, has been deprived of the ability to charter the Vessel in exchange for compensation, has been required to cancel pre-booked charters, and has sustained reputational damage.

82.    As a result of Bering's failure to deliver the Vessel within the deadline set forth in the Agreement, many of the components and other equipment already fitted to the Vessel are

12

functionally obsolete, outdated, and/or outside of the manufacturer's warranty period, thereby diminishing the value of the Vessel and appeal to potential charter guests.

## FOR A FIRST CAUSE OF ACTION
**(Veil Piercing/Alter-Ego as between Bering Naval, Bering Yachts, Bering Sales, Hysucat, Bering Marine, Bering Naval Setup, Bering Naval Technologies, Bering Naval Management, Bering Naval Free Zone Branch, Bering Naval Third Branch, Bering Bulgaria, Bering Bulgaria Shipyard, Seagull)**

83.     Angeles restates the foregoing allegations of the Complaint not inconsistent herewith and incorporates the same herein by reference.

84.     At all times material to the Agreement, Bering Naval, Bering Yachts, Bering Sales, Hysucat, Bering Marine, Bering Naval Setup, Bering Naval Technologies, Bering Naval Management, Bering Naval Free Zone Branch, Bering Naval Third Branch, Bering Bulgaria, Bering Bulgaria Shipyard, and Seagull (collectively hereinafter "Bering Defendants") were alter-egos of each other insofar as neither maintained its separate corporate existence from the other and each exercised actual control over another, operating each as a mere instrumentality or tool in furtherance of the other entity's own interests. In support thereof, and without limitation, the Agreement itself provides "if Bering is a member of a group of companies, Bering may perform any of its obligations or exercise any rights under the Agreement by itself or through any member of its group but provided that any act or omission of any such other member shall be deemed to be the act or omission of Bering."

85.     In further support thereof, and without limitation, at all times material to the Agreement:

a.      Bering Naval and Bering Yachts were both listed on the Agreement;

b.      Bering Bulgaria manufactures various vessels, including but not limited to catamaran under the Bering Yachts names;

13

c.    Bering Bulgaria operates in tandem with Bering's Turkish facilities, producing hulls and superstructures that are then shipped to Turkey for final build-out and outfitting;

d.    Bering Bulgaria Shipyard operates in tandem with Bering's Turkish facilities with respect to the manufacture of yachts;

e.    Bering Bulgaria and Bering Bulgaria Shipyard are under common ownership or control by Viatkin and/or Mikhaylov;

f.    All marketing related to shipbuilding is conducted under the "Bering Yachts" name and contains the same trademarked logo;

g.    All Bering Defendants share a common beringyachts.com website;

h.    The LinkedIn account for "Bering Yachts" reflects a Raleigh, North Carolina address with a Raleigh, North Carolina telephone number, represents its industry as "Shipbuilding", reports a company size of 51-200 employees, reports four international addresses including 12608 Leatherwood Court, Raleigh, North Carolina, 801 Seabreeze Blvd., Fort Lauderdale, Florida, and Antalya, Turkey, lists its specialties as "Yacht building, Passagemakers, Expedition yachts, Steel yachts, Displacement yachts, Explorer trawler yachts, Ocean going yachts, Semi-custom trawler yachts, Shipbuilding, and Semi-custom yacht manufacturer" and further reports "[f]or more than fifteen years, Bering Yachts has been creating, innovating, and delivering steel exploration yachts."

i.      Bering Yachts and Bering Sales interchangeably utilize the 801 Seabreeze Blvd., Fort Lauderdale, Florida and 12608 Leatherwood Court, Raleigh, North Carolina addresses;

j.      Bering Yachts and Bering Naval Free Zone Branch interchangeably utilize the Antalya Serbest Bölgesi 3.Sok. No:1 C Adası 32/2 33/1 Konyaaltı/Antalya the address;

k.      At various times relevant to the Agreement, Bering Yachts, Hysucat, and Bering Marine have reported the nature of their business to be "boats", "boat manufacturing", "Bering Yachts Sales LLC", and "Bering Yachts LLC";

l.      At various times relevant to the Agreement, Bering Yachts, Viatkin, Mikhaylov, and Kibireva were the dominant, majority, and/or sole shareholder of Bering Defendants;

m.      At various times relevant to the Agreement, Viatkin, Mikhaylov, and Kibireva had complete domination and control over the operations of all Bering Defendants;

n.      The Bering Defendants do not maintain separate email addresses or contact information, but rather, perform all communications relating to shipbuilding via @beringyachts.com email domains;

o.      Bering Defendants would routinely enter contracts and other binding agreements on behalf of the other, including without limitation with respect to the Agreement and dealings with Angeles;

p.    The Bering Defendants have a commonality of principals/officers/directors/managers/members such that there was a common control of all entities;

q.    Bering Defendants failed to disclose to third-parties, including Angeles, the separate and distinct corporate existences of the various entities;

r.    Bering Defendants exclusively operated under the trade name "Bering Yachts" without differentiation as to the entities or their distinct roles with respect to the Agreement or the construction of the Vessel;

s.    Bering Defendants exerted complete domination and control over the operations of the other such that each were not operating as a standalone corporate entity;

t.    Angeles alternately communicated with employees and/or agents of Bering Defendants with respect to the Agreement and the construction of the Vessel;

u.    Angeles would routinely receive updates regarding the Agreement via individuals with an email address of @beringyachts.com and with signature blocks alternately bearing Bering Yachts and/or Bering Yachts LLC;

v.    Representatives of each Bering Defendant would speak on behalf of other Bering Defendants with respect to shipbuilding activities, and vice versa;

w.    Bering Defendants conducted a single "shipbuilding" enterprise as it relates to the Agreement and the construction of the Vessel;

x.    Bering Defendants would comingle and intermingle funds as between the entities, including but not limited to Bering Naval paying for booth space for Bering Yachts at boat shows and installment payments for the Vessel under the

16

Agreement being interchangeably invoiced by and paid to Bering Yachts and Bering Naval;

y.    Bering Defendants routinely utilizing assets of other Bering Defendants without compensation in furtherance;

z.    Bering Defendants would routinely siphon funds from the other Bering Defendants as needed for operational considerations of each respective entity;

aa.   Upon information and belief, Seagull was formed, in part, to construct a residence for Mikhaylov and Kibireva;

bb.   Upon information and belief, at the express direction of or with the complicit agreement of Viatkin, significant funds were siphoned from the operations of various Bering Defendants (excluding Seagull) and funneled Seagull to assist in the funding of the residence for Mikhaylov and Kibireva;

86.    Under the circumstances as existed at all times relevant to this action, it would be inequitable to treat the Bering Defendants as having separate corporate existences as doing so would sanction a fraud, promote, injustice, or lead to an inequitable result.

87.    Angeles has been harmed by the fraud perpetrated by the fraud perpetrated by the Bering Defendants.

88.    Based upon the foregoing, the liabilities and obligations of any one Bering Defendant as to Angeles, on the one hand, became the liabilities and obligations of the other Bering Defendants, on the other, and vice-versa.

17

## FOR A SECOND CAUSE OF ACTION
### (Veil Piercing/Alter-Ego/Personal Liability of Viatkin, Mikhaylov, Mishina, Kibireva, Williams, and Kholyavskiy)

89.     Angeles restates the foregoing allegations of the Complaint not inconsistent herewith and incorporates the same herein by reference.

90.     At all times material to the Agreement, Viatkin, Mikhaylov, Mishina, Kibireva, Williams, and Kholyavskiy (collectively hereinafter the "Individual Defendants") were the sole, dominant, or majority shareholder and/or members/managers of Bering Defendants and exerted complete domination and control over the operation of Bering Defendants such that the Individual Defendants and the entities were alter-egos of each other, the entities failed to maintain separate corporate existence from the Individual Defendants and each of the Individual Defendants exercised complete and total actual control over the Bering Defendants, with the Bering Defendants operating as a mere instrumentality or tool in furtherance of the Individual Defendants' personal interests.  In support thereof, and without limitation:

     a.     There was a unity of interest and ownership such that separate personalities of the Bering Defendants and the Individual Defendants did not exist;

     b.     The Bering Defendants were routinely undercapitalized;

     c.     The Bering Defendants routinely disregarded corporate formalities;

     d.     The Bering Defendants represent excessive fragmentation of a single business enterprise into separate corporate entities;

     e.     The Individual Defendants siphoned funds from the Bering Defendants for personal use, including but not limited to interior design services being paid by credit cards associated with Bering Defendant(s), including but not limited to Bering Yachts, and products intended for use in connection with Bering

18

Defendants' business being misappropriate for use at personal residences of the Individual Defendants;

f.    The Individual Defendants swapped shares in the various Bering Defendants in exchange for the acquiescence or approval of each other of the siphoning of funds from the Bering Defendants for personal use;

g.    The Individual Defendants acquiesced or approved of the transfer of assets from the Bering Defendants for the personal use of the dominant and/or sole members/shareholders; and

h.    The Individual Defendants transferred assets of the Bering Defendants as between the Bering Defendants and ultimately for their own personal use.

91.    As a result of the foregoing, Angeles was proximately harmed because Bering Defendants, including but not limited to Bering Yachts and Bering Naval, were so undercapitalized from the improper transfer of assets and siphoning of funds as between the Bering Defendants and Individual Defendants that the Bering Defendants were unable to comply with their obligations to Angeles under the Agreement including but not limited to timely completion and delivery of the Vessel, which has caused monetary damages to Angeles.

92.    Angeles has been harmed by the fraud perpetrated by the Individual Defendants insofar as funds, which could have been utilized for adherence to the Agreement and completion of the Vessel by the Bering Defendants, were siphoned from the Bering Defendants and funneled to the Individual Defendants for their personal use.

93.    Under the circumstances as existed at all times relevant to this action, it would be inequitable to treat the Bering Defendants as having separate corporate existences from the

Individual Defendants as doing so would sanction a fraud, promote, injustice, or lead to an inequitable result.

94.    Based upon the foregoing, the liabilities and obligations of the Bering Defendants as to Angeles, on the one hand, became the personal liabilities and obligations of the Individual Defendants.

**FOR A THIRD CAUSE OF ACTION**
**(Specific Performance Against All Defendants)**

95.    Angeles restates the foregoing allegations of the Complaint not inconsistent herewith and incorporates the same herein by reference.

96.    Following its execution on December 15, 2021 , the Agreement constituted a valid contract.

97.    The terms of the Agreement were so definite and certain that the acts to be performed by the parties to the Agreement can be easily ascertained.  In support thereof, and without limitation:

 a.    The Agreement provides for the construction of a one-of-a-kind, semi-custom 77-foot steel and aluminum Long-Range Explorer Motor Yacht (the "Vessel");

 b.    The terms of the Agreement endeavor to further the fulfillment of highly specialized requirements set forth by Angeles as it relates to Angeles' requirements for the Vessel;

 c.    The terms of the Agreement provide for a tailored interior built to accommodate Angeles' plans to use the Vessel for charter operations;

 d.    The terms of the Agreement provide the Vessel measures less than 24 meters in length to comply with regulatory requirements;

20

e. The terms of the Agreement specify that the Vessel shall be equipped with specialized systems essential to its intended use, including but not limited to: high-capacity Silent Mode technology, solar integration, a black and gray water treatment plant, a uniquely integrated high-end sound system throughout, additional high-powered alternators to support an extended power bank, upgraded Furuno navigation equipment, a commercial-grade yacht alarm and monitoring system, a professionally outfitted galley for a charter chef, a hydraulic swim platform, an upgraded 2,500-lb crane, a custom-designed HVAC system, integrated ceiling heaters, precision-balanced custom VEEM superyacht propellers, and a Cathwell cathodic protection system.

98. To date, Angeles has fully performed its obligations under the Agreement and is ready, willing, and able to perform its remaining obligations under the Agreement should they be triggered by Defendants resuming construction and meeting the contemplated construction benchmarks performed to the quality standard set forth in the Agreement in a timely manner. In support thereof, and without limitation:

a. Following execution of the Agreement, and consistent with its obligations thereunder, Angeles has completed all installment payments as required by the Agreement, and is prepared to continue once Defendants have met the construction benchmarks identified therein;

b. To date, Angeles has paid approximately 83% of the total purchase price of the Vessel whereas the construction of the Vessel is, at best, approximately 70% completed; and

c. Upon completion of the remaining benchmarks and assurances of viability of completion of the Vessel in a timely manner, Angeles is ready, willing, and able to tender payment in the agreed-upon percentages and amounts as identified in the Agreement.

99. As a result of the foregoing, Angeles has been proximately harmed by the Defendants' failure to adhere to the terms of the Agreement and failure to deliver the Vessel by the agreed-upon delivery date, including but not limited to Angeles' loss of use of the uniquely tailored Vessel for use in connection with Angeles' anticipated charter operations.

100. Angeles is unable to source an alternate yacht meeting the requirements for the Vessel from other available sources.

101. As a result, Angeles is entitled to specific performance of the Agreement by the Defendants.

## FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract Against All Defendants)

102. Angeles restates the foregoing allegations of the Complaint not inconsistent herewith and incorporates the same herein by reference.

103. At all times material to the Agreement, the Agreement constituted a valid contract between the parties.

104. Defendants have breached the Agreement by failing to timely construct and, ultimately, complete construction of the Vessel and deliver the Vessel to Angeles as provided for in the Agreement.

105. As a result of the breach, Angeles has been proximately harmed because Defendants have failed to comply with their obligations under the Agreement, including but not

22

limited to timely completion and delivery of the Vessel, which has caused and will continue to cause monetary damages to Angeles.

WHEREFORE, having complained of Defendants herein, Angeles prays that this honorable Court award specific performance of the Agreement in favor of Angeles from the Defendants, award Angeles costs and fees from the Defendants, and award Angeles sufficient monetary damages to fully compensate Angeles for the damages sustained as a result of Defendants' breach of the Agreement.

Respectfully submitted this 30th day of July 2025.


s/C. Fredric Marcinak
C. Fredric Marcinak (Bar #38331)
Garrett M. Simpson (Bar #61478)
Moseley Marcinak Law Group, LLP
PO Box 26148
Greenville, SC 29616
(864) 246-6025
Fred.marcinak@momarlaw.com
Garrett.simpson@momarlaw.com
*Attorneys for Angeles, LLC*